## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DDROPS COMPANY, REINHOLD VIETH, and ELAINE VIETH, | ) ) ) |
| Plaintiffs, | ) C.A. No. _____ ) |
| v. | ) ) |
| MOM ENTERPRISES, LLC, d/b/a MOMMY'S BLISS, | ) **JURY TRIAL DEMANDED** ) ) |
| Defendant. | ) |

## COMPLAINT

Plaintiffs Ddrops Company ("Ddrops"), Reinhold Vieth, and Elaine Vieth (collectively "the Vieths," and together with Ddrops, "the Plaintiffs"), for their Complaint against Defendant MOM Enterprises, LLC, d/b/a Mommy's Bliss ("MOM"), allege and state as follows:

## NATURE OF THE ACTION

1. This is an action for infringement of U.S. Patent No. 9,066,958.

## PARTIES

2. Ddrops is a partnership registered under the laws of Ontario, Canada, with its principal offices located in Woodbridge, Ontario, Canada.

3. The Vieths are individuals who are citizens of Canada and reside in Toronto, Canada.

4. On information and belief, MOM Enterprises, LLC is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business and/or corporate offices at 1003 W. Cutting Blvd., Ste. 110, Richmond, CA 94804, and with a registered agent for service of process located at 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 in that this action arises under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*

6. This Court has personal jurisdiction over MOM because, *inter alia*, MOM is organized under the laws of the State of Delaware, does business in this Judicial District, and has committed and continues to commit acts of patent infringement in this Judicial District giving rise to this action. MOM has sufficient minimum contacts within this Judicial District, such that the exercise of personal jurisdiction over MOM would not offend traditional notions of fair play and substantial justice.

7. Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400 because MOM is organized and existing under the laws of the State of Delaware and therefore resides in this Judicial District.

## FACTS

8. The Vieths are inventors and owners of certain inventions relating to vitamin D compositions and methods of administering such compositions to human beings (the "Inventions").

9. The Vieths have received numerous patents world-wide on the Inventions, including, but not limited to, Canadian Patent No. 2,578,881 (the "Canadian Patent"), entitled "Vitamin D Compositions and Method of Administration to a Human Being," which issued on November 4, 2008.

10. On June 30, 2015, the United States Patent and Trademark Office (USPTO) duly and validly issued U.S. Patent No. 9,066,958 ("the '958 Patent"), entitled "Vitamin D Compositions and Method of Administration to a Human Being," to the Vieths. The Vieths are

the owners of the '958 Patent. A true and correct copy of the '958 Patent is attached as Exhibit A.

11. On January 1, 2007, the Vieths granted an exclusive, world-wide license under all patents or patent applications relating to the Inventions to The Ddrops Company, Inc., a Canadian corporation, including the right to enforce the patent against infringers and to collect damages ("the License"). The '958 Patent is within the scope of the License.

12. On July 24, 2008, the Ddrops Company, Inc., with the consent of the Vieths, transferred and assigned all its rights and obligations under the License to Ddrops.

13. Since November 4, 2008, the Plaintiffs have successfully enforced the Canadian Patent against various infringers in Canada. As a result, the various defendants in such actions have stipulated that the Canadian Patent is valid, enforceable, and infringed, and the infringers against whom such actions were commenced have ceased sales of their infringing products in Canada.

14. Since June 30, 2015, the Plaintiffs have successfully enforced the '958 Patent against various infringers in the United States. As a result, the various defendants in such actions have stipulated that the '958 Patent was infringed, and the infringers against whom such actions were commenced have ceased sales of their infringing products in the United States and agreed not to challenge the validity of the '958 Patent.

15. Ddrops sells vitamin D supplements, including vitamin D supplements for infants, the method of use of which is covered by one or more claims of the '958 Patent in the United States, including in the State of Delaware.

16. Ddrops sells its vitamin D supplements under the registered U.S. trademark "Baby Ddrops®." Ddrops has sold Baby Ddrops in Delaware since at least 2015. A true and correct copy of the Baby Ddrops packaging and bottle are attached as Exhibit B.

17. Since issuance of the '958 Patent in 2015, Ddrops has marked the product packaging with the express notice, "U.S. Patent 9066958." Ddrops has shipped and sold the Baby Ddrops Product with the '958 Patent number on the packaging into the United States since 2015.

18. The packaging and bottle label for the Baby Ddrops product states that its ingredients are cholecalciferol, which is Vitamin $D_3$, and fractionated coconut oil, which is a medium chain triglyceride (MCT).

19. The packaging and bottle label for the Baby Ddrops product instructs the end-user on the patented method for administering vitamin D:

> **Directions**: Infants less than 1 year old: Place 1 drop daily onto mother's nipple or on a clean surface, such as a washed finger or a pacifier, and allow baby to suck for at least 30 seconds. Or mix one drop daily with milk, juice or other food.

20. The packaging and bottle label for the Baby Ddrops product state: "Serving Size: 1 drop (0.028mL or 0.001 fl. oz.)."

21. The packaging for the Baby Ddrops product advises end-users: "Vitamin D is important for healthy growth and development in infancy and childhood especially for normal bone growth and muscle strength."

22. The packaging for the Baby Ddrops product states: "The American Academy of Pediatrics recommends that infants who are breast-fed or partially breast-fed should be supplemented with 400 IU of vitamin D daily."

23. The Baby Ddrops product provides 400 IU of vitamin $D_3$ per drop.

24. The Baby Ddrops product has been the subject of several clinical studies, which confirmed its efficacy in providing vitamin D to infants. The results of these studies have been published in peer-reviewed journals.

25. Ddrops' Baby Ddrops product has received several industry awards, including a Mom's Choice Gold Award and a Parent tested – Parent approved™ award.

26. Sale of Ddrops' Baby Ddrops product to end-users is an important introduction for long-term sales of vitamin supplements for older children and adults. Ddrops also sells vitamin D supplements for older children and adults.

27. Ddrops has invested millions of dollars in marketing and advertising its Baby Ddrops product and the '958 Patented in the United States.

28. MOM is a direct competitor of Ddrops.

29. Upon information and belief, MOM is fully aware of Ddrops' Baby Ddrops product and the '958 Patent, which is disclosed on the Baby Ddrops packaging. Ddrops also provided written notice of the '958 Patent and its unlawful infringement of the '958 Patent to MOM.

30. Upon information and belief, prior to 2021, MOM sold one or more vitamin D products under the Mommy's Bliss® brand, which was made using inferior sunflower oil.

31. Upon information and belief, sometime in 2021, MOM replaced the inferior sunflower oil used in its Mommy's Bliss baby vitamin D products with Medium Chain Triglyceride (MCT) Oil and instructed end-users to administer the product using the innovative method disclosed in the '958 Patent ("the Infringing Product"). True and correct copies of the bottle and packaging for the Infringing Product are attached as Exhibit C.

32. Upon information and belief, MOM switched its formula from using inferior sunflower oil in its previous product to MCT Oil in its Infringing Product to make it a copy of Ddrops' award-winning Baby Ddrops product.

33. The packaging and bottle label for the Infringing Product states that it is "Manufactured for MOM Enterprises, Inc."

34. Upon information and belief, MOM uses a third-party contract manufacturer to manufacture, package and distribute the Infringing Product.

35. The packaging of the Infringing Product states, "Baby Vitamin D" and "1 drop = 400 IU."

36. The packaging of the Infringing Product states "Serving Size: 1 drop (0.026 mL) daily." The Infringing Product bottle states "directions Tilt and squeeze gently for one drop daily (400 IU)."

37. The packaging of the Infringing Product states its ingredients are "Vitamin D3 10 mcg (400 IU) 100% (cholecalciferal)" and "Organic Medium Chain Triglyceride (MCT) Oil." The Infringing Product bottle states, "Ingredients: Organic Medium Chain Triglyceride (MCT) Oil, Vitamin D3."

38. The Infringing Product instructs the purchaser or end-user to use the '958 Patent's method to administer the Infringing Product: "Tilt bottle and squeeze gently to dispense one drop. Place one drop daily onto mother's nipple or a pacifier, or mix with formula, breast milk, juice, or other foods. Do not exceed recommended daily serving."

39. MOM highlights the Infringing Product's ingredients in its advertising. For example, on Amazon.com (https://www.amazon.com/Mommys-Bliss-Vitamin-Organic-Drops/dp/B01FSY52FK/ref=sr_1_5?crid=1EW2O9TO2VF3I&keywords=mommy%27s+bliss+v

itamin+d&qid=1647383055&sprefix=mommy%27s+bliss+%2Caps%2C91&sr=8-5), MOM has this image:



40. Use of MOM's Infringing Product by an end-user infringes, either literally or under the doctrine of equivalents, the '958 Patent, including at least claim 1.

41. Claim 1 of the '958 Patent states:

A method of delivering a nutritional or therapeutic amount of vitamin D to a human being, said method comprising:

> (i) applying one drop of a composition consisting of a nutritional or therapeutic effective amount of 9 to 9000 mcg/ml vitamin D in a liquid triglyceride of 6 to 12 carbon chain length, to an exterior surface of an object, wherein said drop adheres to the surface of said object; and (ii) having said human being suck or lick said composition directly from said object.

42. Based upon a chemical analysis of the Infringing Product and a review of the Infringing Product's packaging, bottle, and MOM's advertising, use of the Infringing Product by

an end-user meets each limitation of at least claim 1 of the '958 Patent, either literally or under the doctrine of equivalents, in that:

    a) A chemical analysis of the Infringing Product shows that one drop contains a therapeutic effective amount of 9 to 9000 mcg/ml vitamin D in a liquid triglyceride composition of $C_8$, $C_{10}$ and $C_{12}$ fatty acids, which are 8 to 12 carbon chain length.

    b) The Infringing Product's bottle and packaging states, "baby vitamin D organic drops provide the recommended amount of vitamin D for healthy growth and bone development of infants who are breastfed." The Infringing Product's bottle and packaging identifies the Infringing Product as a "Liquid Dietary Supplement."

    c) The Infringing Product's bottle and packaging states that the serving size is one drop that provides 400 IU vitamin D3 "(% Daily value 100%)."

    d) The Infringing Product's bottle and packaging instructs end-users to: "Tilt bottle and squeeze gently to dispense one drop. Place one drop daily onto mother's nipple or a pacifier …."

    e) MOM has posted one or more videos online demonstrating and instructing end-users to dispense one drop of the Infringing Product onto a "clean area such as mother's nipple or clean finger" and placing it into a baby's mouth. *See, e.g.*, https://m.media-amazon.com/images/S/vse-vms-transcoding-artifact-us-east-1-prod/v2/118410db-3d23-5990-8924-f812e8b74ab0/ShortForm-Generic-480p-16-9-1409173089793-rpcbe5.mp4.

43. MOM specifically instructs end-users of the Infringing Product to place one drop of the Infringing Product, which is a liquid consisting of vitamin D3 in medium chain

triglycerides, on a mother's nipple or other exterior surface, and to allow a baby to suck the vitamin D off the exterior surface.

44. Upon information and belief, MOM uses its https://mommysbliss.com website to market and sell the Infringing Product directly to end-users nationwide, including, to end-users located in the State of Delaware.

45. Upon information and belief, MOM sells the Infringing Product to large and small retailers nationwide, including, but not limited to, Amazon.com, Target Corporation, CVS Health Corporation, Walmart Stores, Inc. and Walgreens Boots Alliance, Inc.

## COUNT I

### (Infringement of the '958 Patent)

46. The Plaintiffs restate and reallege paragraphs 1 through 45 and incorporate them herein by reference.

47. End-users of the Infringing Product directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '958 Patent, including but not limited to claim 1, in violation of 35 U.S.C. § 271(a), by following and performing the steps on the packaging and bottle of the Infringing Product and on MOM's advertising materials.

48. Prior to, and after, commencing sales of the Infringing Product, MOM knew of the '958 Patent.

49. Prior to, and after, commencing sales of the Infringing Product, MOM had the specific intent to induce and to cause end-users to directly infringe the '958 Patent.

50. Prior to, and after, commencing sales of the Infringing Product, MOM, with knowledge of the '958 Patent, actively induced and encouraged end-users to directly infringe the

'958 Patent, including, but not necessarily limited to, through their instructions for use on the Infringing Product's packaging and bottle and on MOM's advertising materials.

51. MOM is liable for inducing infringement of the '958 Patent, including but not limited to claim 1, in violation of 35 U.S.C. § 271(b).

52. MOM's inducing infringement of the '958 Patent has been willful, reckless, and in conscious disregard of the Plaintiffs' lawful patent rights in the '958 Patent. MOM acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and this objectively defined risk was either known or so obvious that it should have been known to MOM.

53. As a result of MOM's inducing infringement of the '958 Patent, the Plaintiffs have suffered loss and damage, including lost profits, lost royalties, loss of goodwill, price erosion and other damages, the precise amounts to be determined at trial.

54. As a result of MOM's induced infringement of the '958 Patent, the Plaintiffs have suffered, and will continue to suffer, irreparable harm, and additionally as a result of MOM's benefitting from, and "free-riding" on, Ddrops' substantial advertising and marketing campaigns in the United States.

55. Because of the irreparable and continuing harm caused by MOM's inducing infringement, the Plaintiffs are entitled to injunctive relief enjoining MOM, their officers, directors, attorneys, and all other persons acting in concert with them from importing, offering for sale, or selling the Infringing Product or colorable imitations thereof in the United States for the term of the '958 Patent and requiring MOM to recall all Infringing Products from store shelves in the United States and requiring the destruction of such Infringing Products as well as Infringing Products in inventory or its distribution system.

## DEMAND FOR JURY TRIAL

The Plaintiffs demand a trial by jury on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Ddrops Company, Reinhold Vieth, and Elaine Vieth pray for entry of judgment against Defendant MOM Enterprises, LLC, d/b/a Mommy's Bliss as follows:

1. For an entry of judgment holding that MOM has infringed and is infringing the '958 Patent.

2. For a determination that MOM's infringement has been willful, reckless, and in conscious disregard of Plaintiffs' lawful patent rights.

3. For an award of damages adequate to compensate for the infringement of the '958 Patent, but in no event less than a reasonable royalty, against MOM, the precise amount to be determined at trial.

4. For an order enjoining MOM and all persons in active concert with them, from infringing and continuing to infringe the '958 Patent for its term by making, using, selling, or offering for sale the Infringing Product or any colorable imitations thereof.

5. For an order requiring MOM to recall all existing Infringing Products from all store shelves in the United States and to destroy such Infringing Products including all Infringing Products in its inventory or distribution system.

6. For treble damages pursuant to 35 U.S.C. § 284 on all sums awarded against MOM.

7. For a finding that this case is exceptional and an award of attorneys' fees pursuant to 38 U.S.C. § 285 and all costs incurred in connection with this action.

8. For pre- and post-judgment interest on all sums awarded as allowed by law.

9. For such other and further relief as the Court may deem just and equitable.

|  |  |
|---|---|
| | CONNOLLY GALLAGHER LLP |
| OF COUNSEL: | /s/ Alan R. Silverstein |
| | Alan R. Silverstein (#5066) |
| Alan M. Anderson | 1201 North Market Street |
|   (*pro hac vice* admission pending) | 20th Floor |
| L. Reagan Florence | Wilmington, DE 19801 |
|   (*pro hac vice* admission pending) | (302) 757-7322 |
| Matthew Palen | asilverstein@connollygallagher.com |
|   (*pro hac vice* admission pending) | |
| ALAN ANDERSON LAW FIRM LLC | *Attorneys for Plaintiffs* |
| Crescent Ridge Corporate Center | *Ddrops Company, Reinhold Vieth,* |
| 11100 Wayzata Blvd., Suite 545 | *and Elaine Vieth.* |
| Minneapolis, MN 55305 | |
| aanderson@anderson-lawfirm.com | |
| rflorence@anderson-lawfirm.com | |
| mpalen@comcast.net | |

Dated: March 16, 2022